1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MELVIN KEITH HOOKS,**<br><br>Petitioner,<br><br>**v.**<br><br>**TIMOTHY BUSBY, Warden,**<br><br>Respondent. | Case No. **1:12-cv-00963 MJS (HC)**<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**<br><br>**(Doc. 14)** |

Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent is represented by David A. Eldridge of the office of the California Attorney General. Both parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c). (ECF Nos. 8, 18.)

I.    **PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kings, following his conviction of resisting a peace officer (resulting in death or serious bodily injury) and possession of drugs or paraphernalia. (Pet. at 1.) On October 20, 2010, the trial court sentenced Petitioner to serve an indeterminate term of two consecutive terms of twenty-five years to life in jail. (Id.)

1

1    Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate

2    District, on May 10, 2011. (Lodged Doc. 14.) On November 14, 2011, the court affirmed

3    the judgment. (Answer, Ex. A.) Petitioner filed a petition for review with the California

4    Supreme Court on December 23, 2011. (Lodged Doc. 17.) The Supreme Court

5    summarily denied the petition on February 1, 2012. (Lodged Doc. 18.)

6    Petitioner proceeded to seek post-conviction collateral relief in the form of

7    petitions for writ of coram nobis and habeas corpus. On August 13, 2011 Petitioner filed

8    a petition for writ of coram nobis in Kings County Superior Court. The petition was

9    denied in a reasoned decision on August 25, 2011. Petitioner filed a petition for coram

10   nobis with the Fifth District Court of Appeal on September 15, 2011. The Petition was

11   summarily denied on October 27, 2011. (Lodged Doc. 21.)

12   Petitioner next filed a petition for writ of habeas corpus the Fifth District Court of

13   Appeal on November 22, 2011. (Lodged Doc. 22.) The petition was denied on December

14   7, 2011. (Lodged Doc. 23.) Petitioner then filed a petition for writ of habeas corpus with

15   the California Supreme Court on January 12, 2012. (Lodged Doc. 24.) The petition was

16   denied on May 9, 2012. (Lodged Doc. 25.) Finally, Petitioner filed a second petition for

17   writ of habeas corpus with the California Supreme Court on July 20, 2012. (Lodged Doc.

18   26.) The petition was denied on November 20, 2012.

19   Petitioner filed the instant federal habeas petition on June 14, 2012. (Pet., ECF

20   No. 1.) In his petition, Petitioner presents two claims for relief: (1) that the trial court's

21   imposition of consecutive sentences violated his rights under the double jeopardy clause

22   and the Fifth Amendment, and (2) ineffective assistance of counsel.

23   Respondent filed an answer to the petition on September 25, 2012, and Petitioner

24   filed a traverse to the answer on October 5, 2012. (Answer and Traverse, ECF Nos. 14,

25   16.) The matter stands ready for adjudication.

26   Finally, it is noted that during the pendency of this habeas action, Petitioner's

27   sentenced was modified. On January 7, 2014, Petitioner sought and was granted a

28   reduction of his sentence under the Three Strikes Reform Act of 2012. See Cal. Pen

2

Code § 1170.126. (ECF No. 23 at 9-11.) Petitioner's sentence was reduced to a determinate term of nine years and four months in prison. (Id.)

## II.    STATEMENT OF THE FACTS[1]

### FACTUAL BACKGROUND

At approximately 8:10 a.m. on August 5, 2008, Correctional Officers Joel Lucas and Kathy Bonilla were on duty at Avenal State Prison when Officer Lucas received word that prisoners in Housing Unit 230 (the unit) were to leave the unit and go into the prison yard, and that as the inmates exited the unit, officers were to check them for proof of identification and conduct patdown searches of inmates chosen at random. Shortly thereafter, as appellant was about to exit the unit and enter the yard, Officer Bonilla saw that he was carrying two lunch bags. Appellant handed the lunch bags to Officer Bonilla. She looked inside and saw that they contained only food, at which point she told appellant to turn around so that she could conduct a search of appellant's person.

Appellant was initially cooperative as Officer Bonilla held his collar with one hand and patted the outside of his clothing with the other, but subsequently he failed to comply with Officer Bonilla's order that he stop moving his arms. Officer Bonilla called to Officer Lucas for assistance and as he approached, appellant started to run to his left. Officer Lucas stopped appellant, who then tried to run to his right. Officer Lucas wrapped his arms around appellant, who continued to try to run. Officer Lucas lost his balance, and he, appellant and Officer Bonilla, who still had hold of appellant's collar, fell to the ground. Officer Bonilla landed on top of appellant, who continued to struggle and try to get away.

At some point—either as appellant fell or shortly after he was on the ground—with his left hand appellant tossed an object toward the "grill gate," just inside the unit. As Officer Lucas went to retrieve the object, a plastic tube approximately five inches long, other prison staff came to Officer Bonilla's aid and, with their assistance, she was able to handcuff appellant.

Inside the plastic container were multiple bindles containing a total 8.8 grams of marijuana.

In falling to the ground, Officer Lucas broke his front teeth and Officer Bonilla suffered an injury to her left knee. She subsequently underwent surgery, but she continued to suffer pain and swelling, she was unable to run, and she was forced to retire.

People v. Hooks, 2011 Cal. App. Unpub. LEXIS 8718, 2-4 (Cal. App. 5th Dist. Nov. 14, 2011).

---

[1]The Fifth District Court of Appeal's summary of the facts in its November 14, 2011 opinion is presumed correct. 28 U.S.C. § 2254(e)(1).

1    **III.    GOVERNING LAW**

2         **A.    Jurisdiction**

3         Relief by way of a petition for writ of habeas corpus extends to a person in

4    custody pursuant to the judgment of a state court if the custody is in violation of the

5    Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. §

6    2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he

7    suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the

8    conviction challenged arises out of the Kings County Superior Court, which is located

9    within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court

10   has jurisdiction over the action.

11        **B.    Legal Standard of Review**

12        On April 24, 1996, Congress enacted the Antiterrorism and Effective Death

13   Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus

14   filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood,

15   114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of

16   the AEDPA; thus, it is governed by its provisions.

17        Under AEDPA, an application for a writ of habeas corpus by a person in custody

18   under a judgment of a state court may be granted only for violations of the Constitution

19   or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n.

20   7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in

21   state court proceedings if the state court's adjudication of the claim:

22        (1) resulted in a decision that was contrary to, or involved an
     unreasonable application of, clearly established federal law, as
23        determined by the Supreme Court of the United States; or

24        (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the State
25        court proceeding.

26   28 U.S.C. § 2254(d).

27             1.    Contrary to or an Unreasonable Application of Federal Law

28        A state court decision is "contrary to" federal law if it "applies a rule that

                                          4

1  contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts

2  that are materially indistinguishable from" a Supreme Court case, yet reaches a different

3  result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06.

4  "AEDPA does not require state and federal courts to wait for some nearly identical

5  factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that

6  even a general standard may be applied in an unreasonable manner" Panetti v.

7  Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The

8  "clearly established Federal law" requirement "does not demand more than a 'principle'

9  or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state

10 decision to be an unreasonable application of clearly established federal law under §

11 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle

12 (or principles) to the issue before the state court.  Lockyer v. Andrade, 538 U.S. 63, 70-

13 71 (2003).  A state court decision will involve an "unreasonable application of" federal

14 law only if it is "objectively unreasonable."  Id. at 75-76, quoting Williams, 529 U.S. at

15 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the

16 Court further stresses that "an *unreasonable* application of federal law is different from

17 an *incorrect* application of federal law."  131 S. Ct. 770, 785 (2011), (citing Williams, 529

18 U.S. at 410) (emphasis in original).   "A state court's determination that a claim lacks

19 merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

20 correctness of the state court's decision."  Id. at 786 (citing Yarborough v. Alvarado, 541

21 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts

22 have in reading outcomes in case-by-case determinations."  Id.; Renico v. Lett, 130 S.

23 Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established

24 Federal law for a state court to decline to apply a specific legal rule that has not been

25 squarely established by this Court."  Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

26 (2009), quoted by Richter, 131 S. Ct. at 786.

27            2.    Review of State Decisions

28      "Where there has been one reasoned state judgment rejecting a federal claim,

5

1   later unexplained orders upholding that judgment or rejecting the claim rest on the same

2   grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). This is referred to as the

3   "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198

4   (9th Cir. 2006). Determining whether a state court's decision resulted from an

5   unreasonable legal or factual conclusion, "does not require that there be an opinion from

6   the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85.

7   "Where a state court's decision is unaccompanied by an explanation, the habeas

8   petitioner's burden still must be met by showing there was no reasonable basis for the

9   state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does

10  not require a state court to give reasons before its decision can be deemed to have been

11  'adjudicated on the merits.'").

12      Richter instructs that whether the state court decision is reasoned and explained,

13  or merely a summary denial, the approach to evaluating unreasonableness under §

14  2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

15  or theories supported or, as here, could have supported, the state court's decision; then

16  it must ask whether it is possible fairminded jurists could disagree that those arguments

17  or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

18  Thus, "even a strong case for relief does not mean the state court's contrary conclusion

19  was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves

20  authority to issue the writ in cases where there is no possibility fairminded jurists could

21  disagree that the state court's decision conflicts with this Court's precedents." Id. To put

22  it yet another way:

23          As a condition for obtaining habeas corpus relief from a federal
            court, a state prisoner must show that the state court's ruling on the claim
24          being presented in federal court was so lacking in justification that there
            was an error well understood and comprehended in existing law beyond
25          any possibility for fairminded disagreement.

26  Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts

27  are the principal forum for asserting constitutional challenges to state convictions." Id. at

28  787. It follows from this consideration that § 2254(d) "complements the exhaustion

6

1  requirement and the doctrine of procedural bar to ensure that state proceedings are the
2  central process, not just a preliminary step for later federal habeas proceedings." Id.
3  (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

4         3.     Prejudicial Impact of Constitutional Error

5       The prejudicial impact of any constitutional error is assessed by asking whether
6  the error had "a substantial and injurious effect or influence in determining the jury's
7  verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551
8  U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the
9  state court recognized the error and reviewed it for harmlessness).  Some constitutional
10 errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v.
11 Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659
12 (1984).  Furthermore, where a habeas petition governed by AEDPA alleges ineffective
13 assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the
14 Strickland prejudice standard is applied and courts do not engage in a separate analysis
15 applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002).  Musalin
16 v. Lamarque, 555 F.3d at 834.

17 **IV.**   **REVIEW OF PETITION**

18     **A.**   **Claim One – The Imposition of Consecutive Sentences**

19      Petitioner contends that the imposition of consecutive sentences violated his
20 rights under California Penal Code Section 654 and the Double Jeopardy Clause of the
21 Fifth Amendment. (Pet. at 13.)

22        1.     State Court Decision

23      Petitioner presented his claim in his direct appeal to the California Court of
24 Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the
25 Court of Appeal and summarily denied in subsequent petition for review by the California
26 Supreme Court. (See Answer, Ex. A, Lodged Doc. 18.)  Since the California Supreme
27 Court denied the petition in a summary manner, this Court "looks through" the decisions
28 and presumes the Supreme Court adopted the reasoning of the Court of Appeal, the last

7

1    state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797,

2    804-05 & n.3 (1991) (establishing, on habeas review, "look through" presumption that

3    higher court agrees with lower court's reasoning where former affirms latter without

4    discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000)

5    (holding federal courts look to last reasoned state court opinion in determining whether

6    state court's rejection of petitioner's claims was contrary to or an unreasonable

7    application of federal law under 28 U.S.C. § 2254(d)(1)).

8        In denying Petitioner's claim, the Court of Appeal explained that:

9    Section 654

10       Appellant contends the imposition of sentence on counts 1 and 2
11   violated section 654 because both counts arose from a single, indivisible
     course of conduct. We disagree.

12       Section 654, subdivision (a) provides, in relevant part: "An act or
13   omission that is punishable in different ways by different provisions of law
     shall be punished under the provision that provides for the longest
     potential term of imprisonment, but in no case shall the act or omission be
14   punished under more than one provision." Thus, under the plain language
     of the statute, multiple punishment may not be imposed for a single "act or
15   omission." (§ 654, subd. (a).) In addition, however, section 654 prohibits
     multiple punishment for multiple acts which comprise an "indivisible course
16   of conduct." (People v. Hester (2000) 22 Cal.4th 290, 294.)

17   A course of conduct is "indivisible" if the defendant acts with "a single
     intent and objective." (In re Jose P. (2003) 106 Cal.App.4th 458, 469.) "If,
18   on the other hand, defendant harbored 'multiple criminal objectives,' which
     were independent of and not merely incidental to each other, he may be
19   punished for each statutory violation committed in pursuit of each
     objective, 'even though the violations shared common acts or were parts
20   of an otherwise indivisible course of conduct.' [Citation.]" (People v.
     Harrison (1989) 48 Cal.3d 321, 335.) Separate objectives may be found
21   when "the objectives were either (1) consecutive even if similar or (2)
     different even if simultaneous." (People v. Britt (2004) 32 Cal.4th 944, 952
22   (Britt).)

23       "The question of whether the defendant held multiple criminal
24   objectives is one of fact for the trial court, and, if supported by any
     substantial evidence, its finding will be upheld on appeal. [Citations.]"
     (People v. Herrera (1999) 70 Cal.App.4th 1456, 1466.) The trial court "is
25   vested with broad latitude in making its determination. [Citations.]" (People
     v. Jones (2002) 103 Cal.App.4th 1139, 1143 (Jones).) The court's findings
26   may be either express or implied from the court's ruling (People v. McCoy
     (1992) 9 Cal.App.4th 1578, 1585), and our review of those findings is
27   made "in the light most favorable to the respondent and [we] presume the
     existence of every fact the trial court could reasonably deduce from the
28   evidence" (Jones, supra, 103 Cal.App.4th at p. 1143).

8

1

2          Appellant argues that his course of conduct in committing the
   instant offenses was indivisible for section 654 purposes because he
   committed both offenses in order to achieve a single objective, viz.
3  "continued possession of the marijuana." He bases this contention in large
   part on People v. Perry (2007) 154 Cal.App.4th 1521 (Perry).

4          In Perry, a car owner returned to his vehicle to find the defendant
   inside it. The defendant emerged from the car holding the car's stereo and
5  brandishing a screwdriver or ice pick, and then ran off, only to be
   apprehended a short time later. The defendant was convicted of robbery
6  and vehicular burglary. The appellate court held the imposition of
   sentence on both offenses violated section 654, reasoning that appellant
7  had the same objective in committing both offenses: to steal the victim's
   car stereo. (Perry, supra, 154 Cal.App.4th at p. 1527.) The court
8  acknowledged that "It is reasonable to conclude that appellant also
   wanted to evade capture," but, the court stated, "escaping was merely
9  incidental to, or the means of completing the accomplishment of the
   objective of taking the stereo. Accordingly, it cannot be said that appellant
10 acted with multiple independent objectives in committing the burglary and
   the robbery." (Ibid.) Appellant suggests, in a similar vein, that his act of
11 resisting Officers Lucas and Bonilla was merely incidental to his objective
   of possessing the marijuana he later attempted to discard.
12
           Perry, however, is inapposite. The Perry court noted, "The
13 application of Penal Code section 654 appears somewhat inconsistent in
   cases in which property is taken in a burglary and ensuing efforts to thwart
14 the theft are met with violence, forceful resistance, or threats of violence.
   There nonetheless appears to be a general distinction between cases
15 addressing convictions of burglary and robbery and cases addressing
   burglary and assault convictions." (Perry, supra, 154 Cal.App.4th at p.
16 1526.) Thus, for example, in People v. Guzman (1996) 45 Cal.App.4th
   1023, the court held section 654 barred punishment for both burglary, in
17 which a motorcycle was taken from a garage, and robbery, in which the
   defendants used force against the pursuing victim who was attempting to
18 stop the culprits. In People v. Vidaurri (1980) 103 Cal.App.3d 450
   (Vidaurri), on the other hand, it was held that multiple punishment was
19 permissible for burglary, in which goods were stolen from a store, and
   numerous assaults on innocent bystanders and store employees who
20 were attempting to prevent the defendant from getting away with the
   goods he had stolen.
21
           The distinction, the court explained, arose out of "the difference
22 between the intent necessarily reflected in convictions of robbery and
   assault." (Perry, supra, 154 Cal.App.4th at p. 1526.) "Assault reflects an
23 intent to perform an act that, by its nature, will probably and directly result
   in the application of physical force to another person. [Citation.] Robbery,
24 while involving the use of force or fear, reflects an intent to deprive the
   victim of property. Accordingly, a conviction of assault committed during
25 an escape with property taken during a burglary reflects, in essence, an
   intent to apply, attempt to apply, or threaten to apply force to a person,
26 rather [than] an intent to steal property. The objective of such an assault
   generally will be to deter, interrupt or put a stop to a pursuit or other effort
27 to capture the defendant and any property taken during the burglary.
   However, if property is taken during a burglary and a robbery pertaining to
28 the same property is committed during the escape, the objective is still

9

essentially to steal the property." (Ibid.)

Thus Perry involved two crimes—robbery and burglary—for which the intent was the same: to commit theft. Here by contrast, neither offense is theft-related and appellant's objective in possessing marijuana was not the same as his objective in resisting a peace officer. His objective in committing the former offense was to possess marijuana, whereas his objective in committing the section 148.10 violation, which is an assaultive offense similar to the assaults in Vidaurri and the other assault cases discussed in Perry, in which it was held section 654 did not preclude multiple punishment, was to "deter, interrupt or put a stop to" the discovery of the contraband. (Perry, supra, 154 Cal.App.4th at p. 1526.)

The instant case is akin to Vidaurri. There, as indicated above, the defendant committed numerous assaults in an attempt to evade capture after committing a burglary in which he stole goods from a store. The appellate court, while specifically declining to adopt a rule that "an escape is never part of one continuous transaction which includes the principal offense" (Vidaurri, supra, 103 Cal.App.3d at p. 464), held that "the burglary and subsequent assaults were not part of one continuous, indivisible course of conduct" because "the assaults were committed in response to the unforeseen circumstance—the approach of the [store] security guards." (Id. at pp. 465-466).

Here too, appellant, while committing one offense—possession of marijuana in prison—committed a second, assaultive offense in response to an unforeseen circumstance: the search of his person being conducted in response to the directive that prison staff conduct searches of randomly chosen inmates. As in Vidaurri, the commission of the instant offenses did not constitute an indivisible course of conduct.

Appellant suggests that in committing both offenses he acted with the single criminal intent to possess marijuana because he was in possession of the contraband at the same time he was committing the section 148.10 violation. We disagree. As indicated above, criminal objectives may be separate even if they exist simultaneously. (Britt, supra, 32 Cal.4th at p. 952.) Here, as demonstrated above, substantial evidence supports the court's conclusion that appellant acted with separate criminal intents in committing the instant offenses. Therefore, the court did not violate section 654 in imposing sentence on both offenses.

Imposition of Consecutive Sentences

Alternatively, appellant argues that the court abused its discretion in imposing consecutive sentences on counts 1 and 2. We disagree.

Under the three strikes law, the court must impose a consecutive sentence for each current offense "not committed on the same occasion, and not arising from the same set of operative facts ...." (§ 667, subd. (c)(6), (c)(7).) If the current offenses were committed on the same occasion, or arose from the same operative facts, then the court has the discretion to sentence concurrently or consecutively. (People v. Deloza (1998) 18 Cal.4th 585, 595-600.)[FN4] Accordingly, where a trial court has such discretion, we review the imposition of consecutive sentences for abuse of discretion.

**FN4**: We assume without deciding, and the parties appear to agree, that the instant offenses were committed on the same occasion and/or arose from the same set of operative facts, and that therefore the imposition of consecutive sentences was not mandatory under the three strikes law.

"In [conducting that review], we are guided by two fundamental precepts. First, '"[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."' [Citations.] Second, a '"decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (People v. Carmony (2004) 33 Cal.4th 367, 376-377.)

California Rules of Court, rule 4.425(a)(1) provides that the criteria affecting the court's decision to impose consecutive, rather than concurrent sentences include the following: "The crimes and their objectives were predominantly independent of each other."

In explaining its decision to impose consecutive sentences the court stated: "In determining whether the Court shall impose consecutive or concurrent sentencing, the Court is of the opinion that their objectives were independent of each other. Specifically the possession of the marijuana occurred prior to the officers even making contact with [appellant], and it was at that time when the officers did make contact with [appellant], that [appellant] made the decision to resist their directives. Therefore, the court will impose consecutive sentencing."

The instant offenses constituted separate criminal acts committed, as we have already explained, with different criminal intents. Appellant possessed marijuana as he was exiting the unit, before he was directed to submit to a search of his person. Thus, as the trial court indicated, appellant had already committed the count 2 offense when, with a different criminal intent, he embarked on the course of conduct that constituted the count 1 offense. On this record, we find support for the conclusion that the instant offenses and their objectives were "predominantly independent of each other" within the meaning of California Rules of Court, rule 4.425(a)(1). Therefore, under the principles of appellate review summarized above, the court did not abuse its discretion in imposing consecutive sentences.

People v. Hooks, 2011 Cal. App. Unpub. LEXIS 8718, 4-14 (Cal. App. 5th Dist. Nov. 14, 2011).

2.    Analysis

Petitioner claims that the trial court violated California Penal Code § 654 by imposing consecutive term for the resisting a peace officer resulting death or serious

11

1  bodily injury charge in light of the life term imposed on possession of drugs or

2  paraphernalia charge because all the crimes involved one single criminal objective.

3  Petitioner further argues that this consecutive sentencing violated the Double Jeopardy

4  Clause of the Fifth Amendment.

5       Petitioner's allegation that the imposition of consecutive sentencing violated

6  California Penal Code § 654 is not cognizable in a federal habeas proceeding. See

7  Swarthout v. Cooke, 131 S. Ct. 859, 861-62, 178 L. Ed. 2d 732 (2011) (reaffirming that

8  federal habeas writ is unavailable for violations of state law or for alleged error in the

9  interpretation or application of state law); Wilson v. Corcoran, 131 S. Ct. 13, 16, 178 L.

10  Ed. 2d 276 (2010) ("it is only noncompliance with federal law that renders a State's

11  criminal judgment susceptible to collateral attack in the federal courts.").

12       Petitioner's additional argument that the consecutive sentencing violated the

13  Double Jeopardy Clause is without merit. The Double Jeopardy Clause contains three

14  distinct constitutional protections. See Plascencia v. Alameida, 467 F.3d 1190, 1204 (9th

15  Cir. 2006). "It protects against a second prosecution for the same offense after acquittal.

16  It protects against a second prosecution for the same offense after conviction. And it

17  protects against multiple punishment for the same offense." North Carolina v. Pearce,

18  395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969); see also Brown v. Ohio, 432

19  U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977).

20       In Plascencia, 467 F.3d at 1204, the Ninth Circuit analyzed whether a petitioner's

21  sentence for murder in addition to a twenty-five years to life enhancement for using a

22  firearm constituted double jeopardy. The Ninth Circuit explained that the United States

23  Supreme Court in Missouri v. Hunter, 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d

24  535 (1983)

25           made clear that the protection against multiple punishments for the same
26           offense did not necessarily preclude cumulative punishments in a single
            prosecution. The key to determining whether multiple charges and
27           punishments violate double jeopardy is legislative intent. When the
            legislature intends to impose multiple punishments, double jeopardy is not
28           invoked.

1   Plascencia, 467 F.3d at 1204. The Ninth Circuit continued by stating that the language of

2   Cal. Penal Code section 12022.53 is clear and that there is no question that the

3   California legislature "simply determined that a criminal offender may receive additional

4   punishment for any single crime committed with a firearm." Id. Here as in Plascencia, the

5   state court's decision to uphold the consecutive term for two separate offenses was not

6   an unreasonable application of established federal law. State law allows for consecutive

7   sentencing for crimes with objectives that are predominantly different from each other.

8   The state court was not unreasonable in determining that the crimes of possession of

9   drugs and resisting a peace officer were predominantly different from each other.

10  Possession of drugs by itself is different than physically resisting the actions of the

11  officers.  Accordingly, petitioner is not entitled to habeas relief on this claim.

12          **B.      Claim Two – Ineffective Assistance of Counsel**

13          In his second claim, Petitioner claims that his trial counsel was ineffective.

14  Petitioner presents various arguments as to why counsel was ineffective, including: that

15  counsel did not provide Petitioner available evidence; that counsel was biased against

16  Petitioner based on counsel's acts of repeatedly waving time and granting extensions

17  thereby providing the prosecution more time to prepare its case; and that counsel was

18  obliged to charge the prosecutor with misconduct for proceeding on charges of battery

19  by a prisoner on a non-confined person when there was not sufficient evidence to

20  support the charges.

21          1.      State Decision

22          Petitioner presented his ineffective assistance of counsel claim by way of a

23  petition for writ of habeas corpus to the California Supreme Court. (Lodged Doc. 24.)

24  The court summarily denied the petition. (Lodged Doc. 25.) In such cases, the Supreme

25  Court has instructed that the court must determine what "arguments or theories… could

26  have supported[] the state court's decision; then it must ask whether it is possible

27  fairminded jurists could disagree that those arguments or theories are inconsistent with

28  the holding in a prior decision of this Court." Richter, 131 S. Ct. at 786.

2.      Law Applicable to Ineffective Assistance of Counsel Claims

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court must consider two factors. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687; see also, Harrington v. Richter, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Id. at 687. The Court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1348; United States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are

14

certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659, and n.25 (1984).

As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the standard for ineffective assistance of counsel in federal habeas is extremely difficult:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S. Ct. at 785-86.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

1    Accordingly, even if Petitioner presents a strong case of ineffective assistance of

2    counsel, this Court may only grant relief if no fairminded jurist could agree on the

3    correctness of the state court decision.

4            3.    Analysis

5    Here, providing the state court decision with appropriate deference, fair-minded

6    jurists could disagree whether trial counsel fell below an objective standard of

7    reasonableness, or, alternatively, that Petitioner was prejudiced by counsel's conduct.

8    First, it appears that Petitioner focuses a large portion of his petition on how the

9    prosecution charged Petitioner with battery, when he contends that there was not

10   evidentiary support for the charge. Regardless of the actions of counsel, the prosecution

11   filed an amended information charging Petitioner with resisting arrest with substantial

12   bodily injury to an officer rather than battery by a prisoner on a non-confined person.

13   From reading the record it appears that there was sufficient factual support for the

14   amended charge of resisting arrest. As Petitioner was not ultimately charged with, or

15   found guilty of, battery, Petitioner suffered no prejudice from counsel's failure to properly

16   defend Petitioner from the charge. Accordingly, the Court cannot find that Petitioner was

17   prejudiced by counsel's actions in defense of the battery charge. Petitioner is not entitled

18   to habeas corpus relief with regard to this claim.

19   Petitioner also contends that counsel was ineffective for failing to provide

20   evidence to Petitioner. However, Petitioner's claims are cursory in nature. They do not

21   describe the evidence that was not disclosed, or how that evidence would have

22   benefited his defense. The factual evidence of the case was straightforward, and there

23   appears to be little dispute over the conduct at issue. Petitioner has not shown that

24   counsel fell below an objective standard of conduct, nor that he was prejudiced by

25   counsel's conduct with regard to this claim. Accordingly, the state court decision denying

26   Petitioner relief was reasonable, and Petitioner is not entitled to relief with regard to

27   counsel's conduct.

28   Finally, Petitioner contends that his counsel was biased against him based on

counsel's actions in granting continuances and delaying the trial to allow the prosecution to gather evidence of a battery. Again, while battery charges were originally filed, the prosecution amended the charge to resisting arrest. Petitioner was not found guilty of battery, and therefore his claim that counsel's actions allowed the prosecution to establish the battery claims are without merit. Petitioner is not entitled to relief with regard to this claim.

In sum, the Court cannot find that counsel fell below an objective level of performance, or that Petitioner was prejudiced by counsel's conduct with regard to any of the allegations raised. Petitioner is not entitled to habeas corpus relief.

## V.   **CONCLUSION**

Petitioner is not entitled to relief with regard to the claims presented in the instant petition. The Court therefore orders that the petition be DENIED.

## VI.   **CERTIFICATE OF APPEALABILITY**

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)   (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> >
> > (B) the final order in a proceeding under

17

section 2255.

> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000).  While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that no reasonable jurist would find the Court's determination that Petitioner is not entitled to federal habeas corpus relief wrong or debatable, nor would a reasonable jurist find Petitioner deserving of encouragement to proceed further.  Petitioner has not made the required substantial showing of the denial of a constitutional right.  Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

## ORDER

Accordingly, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is DENIED;

2) The Clerk of Court is DIRECTED to enter judgment and close the case; and

3) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.


Dated:   June 24, 2014                    /s/ _Michael J. Seng_

                                 UNITED STATES MAGISTRATE JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28